# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRI-DAM,<br><br>        Plaintiff,<br><br>   v.<br><br>RICHARD SCHEDIWY and LAURA STRAUSS<br><br>        Defendants. | 1: 11 - CV - 01141 AWI-SMS<br><br>MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE, SUMMARY JUDGMENT<br><br>(Doc. 20) |

## BACKGROUND

Plaintiff Tri-Dam ("Plaintiff" or "Tri-Dam") brought this action against Defendants Richard Schediwy and Laura Strauss ("Defendants"), seeking a permanent injunction and equitable relief for alleged violations of the Federal Power Act ("FPA" or the "Act")), 16 U.S.C. § 791 *et seq.*, Federal Energy Regulatory Commission ("FERC") regulations, and Tri-Dam's federal license.  This Court has jurisdiction over the case pursuant to 28 U.S.C. §§ 1331 and 1337, and section 317 of the FPA, 16 U.S.C. § 825p, which confers jurisdiction on the federal district courts for violations of the FPA as well as suits in equity and actions at law to enforce liabilities or duties created under the Act.  Defendants now move for dismissal or, in the alternative, summary judgment.  See Court's Docket, Doc. No. 20.  Tri-Dam has filed an opposition to the motion, and Defendants have filed a reply.  The matter was taken under submission without oral argument.  For the reasons set forth below, Defendants' Motion to

Dismiss or in the Alternative, Summary Judgment is denied.

**LEGAL STANDARDS**

**I. Motion to Dismiss Under Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts under a cognizable legal theory. See Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. See Marceau v. Blackfeet Housing Auth., 540 F.3d 916, 919 (9th Cir. 2008). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pac. Prop. & Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Sciences Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Furthermore, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that defendants have violated . . . laws in ways that have not been alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 55 (2007).  Thus, to avoid Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 129 S. Ct. at 1949; see Twombly, 550 U.S. at 570; see also Weber v. Dept. of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant acted unlawfully.  Where a complain pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief.

Iqbal, 129 S. Ct. At 1949-50 (citations omitted).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

**II. Summary Judgment**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006). A fact is material if it could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Miller, 454 F.3d at 987. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.; Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. 477 U.S. at 322; Miller, 454 F.3d at 987. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. 477 U.S. at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,210 F.3d 1099, 1103 (9th Cir. 2000). The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir.2008) (quoting Fed. R. Civ. Pro. 56(e)); Miller, 454 F.3d at 987. In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that

the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Miller, 454 F.3d at 987. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Cline v. Industrial Maintenance Engineering & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; In re Caneva, 550 F.3d 755, 761 (9th Cir. 2008); Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1144 (9th Cir. 2006).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; Giles v. General Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; Price v. Sery, 513 F.3d 962, 965 n.1 (9th Cir. 2008); Lockett v. Catalina Channel Exp., Inc., 496 F.3d 1061, 1064 (9th Cir. 2007). "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255; Miller, 454 F.3d at 987; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find

5

for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

Additionally, the Court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the Court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

**ALLEGED FACTS**

Plaintiff Tri-Dam owns and operates the Tulloch Hydroelectric Project No. 2067 (the "Tri-Dam Project"), located in Tuolumne and Calaveras Counties, California, on Tulloch Reservoir. See First Amended Complaint ("FAC")(Court's Docket, Doc. No. 17) ¶ 3. Plaintiff has a flowage easement for the operation of the Tri-Dam project, and operates under a license from FERC. FAC ¶¶ 8-11. The Tri-Dam project boundary, as defined by FERC, includes an area of approximately 1,619 acres, and includes all the land within the 515-foot elevation contour surrounding Tulloch Reservoir. FAC ¶ 5. Tri-Dam received an initial license from the Federal Power Commission (the predecessor to FERC) on January 1, 1955, for a term ending December 31, 2004. FAC ¶ 8, see 14 F.P.C. 567 (1955). Article 39 of that license provided Tri-Dam with the authority to grant permission for use of lands within the project boundary. See id. Between 2004 and 2006, Tri-Dam operated under an annual license, pending disposition of its new license application submitted in 2002. FAC ¶ 8-11. In 2006, FERC issued the new license. FAC ¶ 11. Pursuant to Article 411 of the 2006 FERC license, known as the Shoreline Management Plan ("SMP"),[1] Tri-Dam has the power to grant permission, without prior FERC approval, for minor

---

[1] The SMP was submitted by Tri-Dam with its license application in 2002 and remained in effect until FERC approved the revised Reservoir Management Plan as directed by the 2006 FERC license. FAC ¶ 11. Thus, the SMP was in effect at all times relevant to this action.

6

development activities – construction of boat ramps, docks, retaining walls, and the like – within the project boundary. FAC ¶ 16. Tri-Dam's FERC license imposes a continuing responsibility to supervise and control the uses and occupancies for which it grants permission, and to ensure that such uses and occupancies are consistent with federal law and policy. FAC ¶ 17. If a permitted use violates any condition of the SMP or any other condition imposed by Tri-Dam, Tri-Dam's FERC license provides that Tri-Dam "shall take any lawful action necessary to correct the violation," including "requiring the removal of any non-complying structures or facilities." FAC ¶ 17.

Defendants Richard Schediwy and Laura Strauss own shorefront property on Tulloch Reservoir within the project boundary; specifically, APN number 067-006-009, known as Lot 2121A, Copper Cove Subdivision, 4378 Council Trail, Copperopolis, California. FAC ¶ 6. On February 28, 2004, under the authority derived from its FERC license, Tri-Dam granted Defendants a permit to construct a retaining wall and install a u-shaped dock on Lot 2121A at the 515-foot elevation contour. FAC ¶ 25. Defendants signed and accepted the permit. FAC ¶ 25. Defendants' contractor built the retaining wall at the 504- to 505-foot elevation contour, in violation of the permit. FAC ¶ 26. Tri-Dam further alleges that the SMP requires that all shoreline protection devices be located above the 510-foot elevation contour level of Tulloch Reservoir. FAC ¶ 21. Tri-Dam conducted a site inspection on April 21, 2004, and discovered the violation at that time. FAC ¶ 27. Over the course of the next several years, Tri-Dam and Defendants exchanged numerous communications attempting to resolve the matter. FAC ¶ 30. The retaining wall, however, has never been corrected or removed.

Tri-Dam filed a Complaint on July 8, 2011 and a First Amended Complaint ("FAC") on September 9, 2011. The FAC seeks a permanent injunction: (1) prohibiting Defendants from installing, possessing, or maintaining property within the Tri-Dam project boundary without seeking prior approval and obtaining a permit from Tri-Dam; (2) prohibiting Defendants from installing, possessing, or maintaining property within the Tri-Dam project boundary that is not in

compliance with a permit obtained from Tri-Dam; and (3) requiring Defendants within ten days of the permanent injunction to submit plans to Tri-Dam for removal of the wall.  FAC at 8.

## DISCUSSION

**I.     Motion to Dismiss**

   *A.     Statute of Limitations*

Defendants move to dismiss the FAC as time-barred.  See Court's Docket, Doc. No. 21 at 7.  Tri-Dam brought this action under section 317 of the FPA, 16 U.S.C. § 825p ("Section 825p"), alleging that Defendants violated a permit issued by Tri-Dam pursuant to its authority as a FERC licensee.  Section 825p provides that the district courts:

> shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder

16 U.S.C. § 825p.  The FPA has no statute of limitations of general applicability.  "Ordinarily, when a federal statute contains no limitations provision, a federal court should apply the 'most appropriate' statute of limitations provided by state law, unless there is a 'relevant' federal statute of limitations."  Sierra Club v. Chevron U.S.A., Inc., 834 F.2d 1517, 1521 (9th Cir. 1987) (quoting *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975)).  The parties have identified 28 U.S.C. § 2462 as a relevant federal statute of limitations.[2]  "When a statutory provision under which civil penalties may be imposed lacks its own statute of limitations, the general statute of limitations for collection of civil penalties, 28 U.S.C. § 2462 applies."  Prohibition of Energy Market Manipulation, 114 F.E.R.C. ¶ 61,047, 61,128 (Jan. 19, 2006).  Title 28 U.S.C. § 2462 provides:

---

[2] Defendants also identify the three-year California statute of limitations for an action for trespass or injury to real property.  Because it is not clear from the moving papers whether this would be the "most appropriate statute of limitations provided by state law" and because both parties agree that 28 U.S.C. § 2462 is the relevant federal statute of limitations, the Court will not address the California statute of limitations.

8

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued, if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

The issue, therefore, is whether Tri-Dam's action for equitable relief is barred by the five-year statute of limitations under 28 U.S.C. § 2462.

Defendants contend that Tri-Dam had actual knowledge of the non-conforming permit on April 21, 2004 and waited until July 25, 2011 to file this action. Thus, if 28 U.S.C. § 2462 applies, the time to sue to enjoin the permit violation passed in 2009. Tri-Dam maintains that 28 U.S.C. § 2462 does not bar its action for an injunction because the statutory language only applies to enforcement of a "civil fine, penalty, or forfeiture, pecuniary or otherwise."

There appears to be a circuit split on the issue of whether 28 U.S.C. § 2462 applies to injunctive relief. The plain language of the statute does not address equitable remedies. Some courts have held that § 2462 therefore bars only penalty suits and not declaratory or injunctive relief when sought by the government.[3] See e.g., U.S. v. Telluride Company, 146 F.3d 1241, 1248 (10th Cir. 1998) (holding that traditional notions of justice requires that statutes of limitations be strictly construed in favor of the Government, such that the Government's request for injunctive relief was not barred by § 2462); U.S. v. Banks, 115 F.3d 916, 919 (11th Cir. 1997) (holding that limitations period does not apply where the government seeks equitable relief in its official enforcement capacity); Federal Election Com'n v. National Republican Senatorial Committee, 877 F.Supp. 15, 20-21 (D.C. Cir. 1995) (allowing FEC's claims for declaratory and injunctive relief to proceed). The Ninth Circuit, however, has invoked the concurrent remedy rule, holding that where a "claim for injunctive relief is connected to the claim for legal relief, the statute of limitations applies to both." Federal Election Com'n v. Williams, 104 F.3d 237, 240 (9th Cir. 1996). In Williams, an action by the Federal Election Commission ("FEC") for

---

[3] The parties have not identified any authority applying § 2462 to an action by a government licensee. Tri-Dam nonetheless concedes that § 2462 is the relevant statute of limitations in this case. The Court will construe § 2462 to apply Tri-Dam, as a FERC licensee.

9

violations of campaign contribution laws, the district court imposed a $10,000 civil penalty and enjoined the defendant from similar violations for a period of ten years. Id. at 239. The Ninth Circuit reversed, holding that § 2462 five-year statute of limitations barred the FEC's action for civil penalties as well as equitable remedies because "equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy." Id. at 240 (quoting Cope v. Anderson, 331 U.S. 461, 464, 67 S. Ct. 1340, 1341 (1947)).

In this case, Defendants have not identified a concurrent legal remedy connected to Tri-Dam's claim for injunctive relief. They do not assert, for example, that the FPA or Tri-Dam's FERC license conferred upon Tri-Dam the power to bring an enforcement action for civil fines or penalties. Nor does Tri-Dam seek pecuniary relief of any kind. The Court finds that Tri-Dam may seek equitable relief beyond the five-year statute of limitations in § 2462 because there is no concurrent legal remedy that would be barred by the statute.[4] The seven-year delay in filing this action will, however, be among the factors considered by the Court in deciding whether to grant the equitable relief sought in this case.

*B.     Standing*

Defendants argue that Tri-Dam has failed to show harm and therefore does not state a claim for injunctive relief. Defendants' argument goes to the issue of standing. "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Wilderness Soc., Inc. v. Rey, 622 F.3d 1251, 1254-55 (9th Cir. 2010) (quoting Summers v. Earth Island Institute, 555 U.S. 488, 493, 129 S.Ct. 1142, 1149 (2009)). Defendants contend that Tri-Dam has failed to show how their failure to remove the wall will harm Tri-Dam. They claim Tri-Dam has not

---

[4] Because Tri-Dam's claims are not time-barred, the Court does not reach Tri-Dam's equitable tolling defense.

10

demonstrated a threat to public safety or navigation in Tulloch Reservoir, or a violation of the SMP. These arguments are inapposite. Tri-Dam alleges, and Defendants concede, that it issued to Defendants a permit to build a wall at the 515-foot elevation contour. Tri-Dam alleges, and Defendants concede, that they built the wall in error at the 504- to 505-foot elevation contour, in violation of the permit, and the wall has not been removed. FAC ¶ 25-26; Court's Docket, Doc. No. 21 at 3. The permit violation and Defendants' failure to remove the wall is a "concrete and particularized" injury that satisfies the standing requirements for injunctive relief. Tri-Dam need not allege any further harm to survive the motion to dismiss. Defendants' additional arguments as to harm and balancing of the hardships are relevant to the merits and will therefore be addressed in the summary judgment section below. Defendants' motion to dismiss for failure to state a claim will be denied.

**II.     Motion for Summary Judgment**

Having determined that Tri-Dam's claims for declaratory and injunctive relief survive Defendants' dismissal motion, the Court now turns to Defendants' motion for summary judgment. Tri-Dam, pursuant to its authority under the FPA as a licensee of FERC, issued to Defendants a permit to construct a retaining wall within the boundary of the Tri-Dam Project. See FAC ¶ 24-27; Court's Docket, Doc. No. 21 at 4. The wall was constructed in a manner that violates the terms of the permit, and it has not been removed. See id. Tri-Dam now seeks an injunction prohibiting Defendants from maintaining property within the Tri-Dam Project boundary that is not in compliance with a permit issued by Tri-Dam, and requiring Defendants to submit plans for removal of the offending wall. A claim for permanent injunction requires a plaintiff to show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Northern Cheyenne Tribe v. Norton, 503 F.3d 836, 843 (9th Cir. 2007) (quoting eBay Inc. v.

11

MercExchange, L.L.C., 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)). Defendants allege they are entitled to summary judgment because there is no genuine issue of material fact.

   *A. Defendants' Statement of Undisputed Material Facts and Tri-Dam's Responses*[5]

   1. Defendants erected a wall that was constructed in error.

   Undisputed.

   2. Defendants complied with the SMP by submitting an adaptive plan for use of the existing wall.

   Disputed. Defendants did not comply with the SMP. Section 6.3 of the SMP states, "All facilities . . . shall not extend more than forty feet from the shoreline, at high water (510 water level) elevations." Further, pursuant to Section 4.5 of the SMP, it is only Tri-Dam, not Defendants who have the authority to decide when an adaptive plan should be submitted.

   3. There is no requirement in the Lake Tulloch SMP for Plaintiff's conformity demand to build the wall to 510 feet or 515 feet.

   Disputed. Section 6.3 of the SMP states, "All facilities . . . shall not extend more than forty feet from the shoreline at high water (510 water level) elevations."

   4. Defendants have tried all manner of ways to remove the wall but contractors would not, warned against the sewer bench road hazzard [sic], and Defendants could not obtain the necessary access road permits.

   The evidence relied upon by Defendant in support of this alleged fact is unauthenticated and inadmissible hearsay. Additionally, it is disputed. Defendants received at least one proposal/estimate to remove the retaining wall and on information and belief, Defendants could

---

[5] See Defendants' Undisputed Material Facts and Supporting Evidence, Doc. No. 22; Decl. of Richard Schediwy, Doc. No. 23; Plaintiffs' Responses to Defendants' Undisputed Material Facts and Supporting Evidence, Doc. No. 27.

have received the proper permits if they had found a contractor.

   5. The wall cannot be removed in the current physical environment.

The evidence relied upon by Defendant in support of this alleged fact is unauthenticated and inadmissible hearsay. Additionally, it is disputed. The wall can be removed during the winter or any other time when there is low water levels such that the work can be done in the dry.

   *B. Defendants' Argument*

Defendants contend Tri-Dam is not harmed by the permit violation and thus they are entitled to summary judgment because Tri-Dam has not satisfied the irreparable injury requirement for a permanent injunction. Defendants raise the following arguments on this point: (1) Tri-Dam's authority to issue and enforce permits is not harmed; (2) Tri-Dam has not shown a violation of the SMP; and (3) Tri-Dam has failed to show that the wall is a threat to public safety and navigation within the cove. The Court will consider each argument in turn.

Defendants argue Tri-Dam brought this action because it will suffer serious harm for violating the obligations imposed by its FERC license. But, Defendants contend, Tri-Dam has not shown that FERC intends to discipline it, pull its license, or take any other action to curtail Tri-Dam's authority. On the issue of harm, however, Tri-Dam does not rely on potential repercussions from FERC. Rather, Tri-Dam maintains that the terms of its federal license require it to ensure that project uses are consistent with federal law and policy, to implement a permitting program to manage project uses, and to maintain project uses according to the SMP. Defendants respond that they have complied with relevant federal statutes and regulations, including the FPA, 16 U.S.C. § 803 ("Section 803"), which states:

All licenses issued under this subchapter shall be based on the following conditions:

(a) Modification of plans; factors considered to secure adaptability of project; recommendations for proposed terms and conditions

(1) That the *project* adopted, including the maps, plans, and specifications be such as in

13

>the judgment of the Commission will be best adapted to a comprehensive plan for improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, for the improvement and utilization of water-power development, for the adequate protection, mitigation, and enhancement of fish and wildlife (including related spawning grounds and habitat), and for other beneficial public uses including irrigation, flood control, water supply, and recreational and other purposes referred to in section 797(c) of this title if necessary in order to to secure such plan the Commission shall have authority to require the modification of any project and of the plans and specifications of the project before approval.

16 U.S.C. § 803(a)(1) (emphasis added). In response to Tri-Dam's July 2010 letter seeking a plan for removal of the wall, Defendants proposed that the existing wall be used not as a retaining wall, but as a support structure for a deck. Under this alternative use, Defendants claim their boat would not intrude as far into the cove and would, in fact, intrude less than several existing neighboring decks. Therefore, Defendants argue, they acted in accordance with Section 803 by modifying their plans for the retaining wall and Tri-Dam refused to consider their proposal. Defendants have, however, misread the statutory language. Section 803 concerns conditions pursuant to which FERC shall issue a license for a project. Under the FPA,

>"project" means complete unit of improvement or development, consisting of a power house, all water conduits, all dams and appurtenant works and structures (including navigation structures) which are a part of said unit, and all storage, diverting, or forebay reservoirs directly connected therewith, the primary line or lines transmitting power therefrom to the point of junction with the distribution system or with the interconnected primary transmission system, all miscellaneous structures used and useful in connection with said unit or any part thereof, and all water-rights, rights-of-way, ditches, dams, reservoirs, lands, or interest in lands the use and occupancy of which are necessary or appropriate in the maintenance and operation of such unit

16 U.S.C. § 796(11). Thus, Section 803 does not regulate the conditions on which Tri-Dam must issue a permit for private development activities within its boundaries, but rather the conditions on which FERC must issue a license to a hydroelectric project such as Tri-Dam. Defendants' argument regarding compliance is therefore unavailing.

Defendants next argue Tri-Dam has failed to show a violation of the SMP. First, Defendants contend they acted in accordance with Section 4.5 of the SMP by redesigning the existing wall. Section 4.5 of the SMP provides in pertinent part:

14

> In considering requests for development approval, Tri-Dam must take into consideration various environmental constraints, development patterns, physical reservoir characteristics, and adjacent land uses which may exist. In accordance with these factors, applicants may be required to redesign or otherwise alter their proposals in order for the project to be approved.

See Court's Docket, Doc. No. 17-1 at 11. Defendants have misconstrued this provision to allow them to submit a redesigned or modified proposal for a project already in existence. The plain language of Section 4.5 indicates that, during the permit approval process, Tri-Dam may require applicants to modify their proposals based on the stated considerations. This language does not suggest that after a permit is issued Tri-Dam must allow a permit holder to modify a project that was built in violation of the permit.

Second, Defendants argue the SMP does not require walls to be built at or above the 510-foot elevation contour. Section 6 of the SMP governs the construction of private facilities like the retaining wall at issue in this action.[6] Section 6.1 provides:

> All parties desiring to construct, expand or rebuild a private single family facility within the FERC Project Boundary of Tulloch Reservoir (at or below the 515 elevation contour) must obtain authorization from the Tri-Dam Project prior to the initiation of excavation or construction. All facilities must be constructed on the applicant's deeded waterfront lot for the purpose of providing private access for occupant of single family type dwellings.

Court's Docket, Doc. No. 17-1 at 14. Defendants contend this does not require a retaining wall to be constructed at 515 feet, rather, if an applicant wishes to build a facility at or below the 515 foot elevation contour, authorization must be received from Tri-Dam. Tri-Dam does not dispute this point. Tri-Dam instead argues Section 6.3 of the SMP requires all facilities to be placed at or above the 510 foot elevation contour. Section 6.3(1) provides in full:

> All facilities shall be designed to ensure that the facilities are located as close to the shoreline as possible, and shall not extend more than forty feet from the shoreline, at

---

[6] The SMP Glossary of Terms defines "facility" as follows: "Any structure, use, or combination of structures that are placed within the FERC Project Boundary. A structure includes, but is not limited to a boat ramp, dock, buoy or other mooring facility, basin, retaining wall, access ramp, stairs or piers." Court's Docket, Doc. No. 17-1 at 4.

15

>high-water (510 water level) elevations. An owner may apply for a facility that extends further than forty feet if it can be demonstrated that the forty feet restriction would make the facility unfeasible given environmental considerations such as topography or terrain. In addition, it must be demonstrated that the facility would not obstruct or interfere with the access of adjacent parcels and public lake use.

Id. Defendants counter that, when read in context, Section 6.3 states requirements for how far a facility must extend from the shoreline, which is not more than forty feet, as measured from the high water elevation of 510 feet. Defendants contend this does not create a requirement that all facilities be built at or above 510 feet. Although the Court is inclined to agree with Defendants' reading of Section 6.3(1), it must view all ambiguities in the light most favorable to the non-moving party on a motion for summary judgment. See Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).

Moreover, the Court finds there is other evidence that Defendants have violated the SMP. Section 4.4(2) of the SMP states that "[t]he construction of any facility must be completed as described in the approved permit and within twelve months from the date of permit approval by Tri-Dam . . ." Court's Docket, Doc. No. 17-1 at 10. Defendants admit the wall was constructed in violation of the permit issued by Tri-Dam. The Court thus finds that Tri-Dam has adduced evidence showing irreparable injury in the form of a violation of Section 4.4(2) of the SMP, in addition to the permit violation.

Finally, although Tri-Dam need not show more to satisfy the irreparable injury prong, the Court notes that Tri-Dam has offered evidence, in the form of a July 12, 2010 letter from Dan W. Pope, the General Manager of the Tri-Dam Project, to support its claim that the wall presents a threat to public safety and navigation. See Court's Docket, Doc. No. 27-2, Ex. J. These facts preclude summary judgment in favor of Defendants on the irreparable injury issue.

The Court now turns to Defendants' impossibility defense. Defendants argue the injunctive relief requested by Tri-Dam would be impossible to perform. In support of this defense, Defendants have offered the Declaration of Richard Schediwy. See id. at Doc. No. 23.

16

Mr. Schediwy states that Defendants' engineer proposed plans to use the existing wall to build a new wall at 510.5 feet with a dock at 511-512 feet. Id. at ¶ 5. But Tri-Dam informed Defendants that they would need to remove the existing wall first. Id. at ¶ 6. To accomplish this, excavation equipment would need to be driven onto the dry lake-bed. Id. at ¶ 5. Mr. Schediwy states that Defendants contacted the local water district regarding access to the road surrounding the cove known as the "sewer bench," but learned that they would need written permission from each of their 24 neighbors to cross their properties at the sewer bench Id. at ¶ 7. Defendants were able to secure permissions from only 18 of 24 neighbors. Id. at ¶ 8. In early 2005, Defendants contacted several contractors regarding removal of the wall, including Table Rock Yardscaping, Delta Oilfield Services, Simunaci Construction, Tri-Construction, Payne Construction, Jimmy Wilson and Merl Holman, but all declined the job because excavation so close to the sewer bench was deemed too hazardous. Id. at ¶ 9. Mr. Schediwy states that Defendants also learned that removing the wall via barge was not an option because a barge would not fit into the cove. Id. at ¶ 10. For these reasons, Defendants argue, even if Tri-Dam's request for injunctive relief is granted, it will be impossible for them to accomplish removal of the wall. Instead, Defendants maintain that they have proposed an alternative use for the wall, as support structure for a deck instead of a dock, that they argue would be "protective of the lake." But, Mr. Schediwy states, Tri-Dam has refused to consider Defendants' proposal. Id. at ¶ 14.

Tri-Dam objects to the statement in the Schediwy declaration that Defendants contacted several contractors and they all declined the job because the excavation was too hazardous. Tri-Dam contends this statement alone is insufficient to establish that removal of the wall is impossible, and, moreover, it is inadmissible hearsay that cannot be considered in support of a motion for summary judgment. Federal Rule of Civil Procedure 56(c)(4) states that:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

17

Federal Rule of Evidence 801 provides that hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tri-Dam cites Block v. City of Los Angeles, 253 F.3d 410 (9th Cir. 2001), for the proposition that an affidavit which contains hearsay cannot be considered for the purposes of summary judgment. In that case, however, the court found that the entire affidavit was not made on personal knowledge and the affiant instead relied on information from unsworn persons whose sources were unclear. 253 F.3d at 419. Here, Mr. Schediwy's statement that several contractors told him that they would not take on the job of removing the wall because it was too hazardous is made based on his personal knowledge. Tri-Dam is correct that Mr. Schediwy's declaration would be inadmissible at trial to prove the truth of the contractors' statements - that removal was, in fact, too hazardous - but would be admissible to prove that contractors had declined to take the job offered by Mr. Schediwy. This fact is evidence of impossibility.

Tri-Dam has, however, offered evidence tending to refute Defendants' impossibility defense. Tri-Dam submits the Declaration of Susan Larson, the Federal Energy Regulatory Commission License Coordinator for the Tri-Dam Project. See Court's Docket, Doc. No. 27-2. Ms. Larson states that on April 27, 2006, she received a "proposal/estimate" from Merle Holman, dated November 21, 2005 and addressed to Richard and Laura Schediwy, for removal of the retaining wall. See id. at Ex. H. On April 27, 2006, Ms. Larson e-mailed Mr. Holman asking for more details regarding Mr. Schediwy's formal proposal for removal of the wall. See Court's Docket, Doc. No. 27-2 at ¶ 12. Ms. Larson further states that the retaining wall can be removed while the water is lowered in the winter, when all work can be done on the dry lake-bed, preventing any impact to water quality and assuring compliance with regulations of the Tri-Dam Project, California Department of Fish & Game, California Regional Water Quality Board, and United States Army Corps of Engineers. Id. at ¶ 18. Based on the evidence before it and drawing all inferences in favor of the non-moving party, the Court finds that there is a genuine dispute as to whether it is presently impossible to remove the wall. This fact is material to

18

balancing the hardships for injunctive relief, and Defendants' summary judgment motion will therefore be denied.

**CONCLUSION AND ORDER**

Based on the foregoing, the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim for Which Relief Can be Granted Or In the Alternative, Summary Judgment (Doc. 20) is DENIED.

IT IS SO ORDERED.

Dated:   December 21, 2011                               _____
                                                         CHIEF UNITED STATES DISTRICT JUDGE

19